■   THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ALBERT JOESPH MASELLI, Appellant.— Judgment of the County Court, Westchester County, rendered February 16, 1967, affirmed. No opinion. Christ, Acting P. J., Rabin, Benjamin and Munder, JJ., concur; Martuscello, J., dissents and votes to reverse the judgment and grant a new trial, with the following memorandum: Appellant, Maselli, and codefendant Weis were jointly tried and were convicted of murder in the first degree and burglary in the first degree. This court is herewith reversing Weis' conviction (*People* v. *Weis,* 30 A D 2d 877), but is affirming Maselli's conviction. The victim of the crimes was Frances Olmstead, an elderly widow who lived alone in a one-family house in Yonkers. She was brutally assaulted in her bedroom during the early hours of March 18, 1966 and she died on April 4, 1966 from the injuries thus inflicted. This assault, however, did not become known until March 20, 1966. On that date, Mrs.

---

Olmstead's daughter, after having tried unsuccessfully for two days to reach her mother by telephone, went to her home and found her covered with blood and unconscious. The bedroom was ransacked, the telephone ripped out and the dresser drawers thrown about. The case against Maselli was based entirely on circumstantial evidence. The prosecution established that he met the victim in December, 1965, and was in her home on February 15, 1966. There was testimony by a detective that after Mrs. Olmstead's body was removed on March 20, 1966, a broken fishing knife was found under some bed coverings upon which she had lain. The knife was received in evidence over objections by both defense attorneys. Arlene Weis, the codefendant's wife, was called as a witness by the prosecution. After she was sworn, counsel for Weis stated, "I am going to move that any testimony on the part of Arlene Weis relative to the Defendant Harry Weis would be privileged communications and that we so exercise that prerogative under Section 2445 of the Penal Law." Counsel for Maselli then stated, "May I join in the motion with respect to the Defendant Maselli on the privileged communication, in view of certain statements I did make prior as to the fruits of the poisoned apple, any privileged communications which may come out directly which may be spoken between Arlene Weis and Defendant Maselli." The trial court denied the motions, stating, "This is merely repetitive of what has been said before which I ruled before." Mrs. Weis was then permitted to testify. She stated that Maselli came to her home, in February, 1966, and told her husband that he knew a woman who had quite a bit of jewelry which would be very easy to get and that he had the keys to her house. Maselli suggested several plans whereby both Mr. and Mrs. Weis could aid in obtaining the jewelry. Both of them refused to become involved. Maselli, according to the witness, returned several times later in February and sought to have her participate in his criminal scheme, but she wanted no part of it. Maselli never named the intended victim. However, there was evidence by Mrs. Weis relative to acts and statements by Maselli which permitted the inference that he had the deceased in mind. Mrs. Weis further testified that Maselli came over again on March 17, 1966, looking for Weis, who was not yet home; that he waited for her husband until he came in at midnight; and that she, after having a private conversation with Weis, left both defendants alone and went to bed. She said that on the following morning, Weis returned home at about 6:30 A.M. Later that day Maselli came to the Weis home at 3:00 in the afternoon. Upon his arrival, Mrs. Weis started arguing with him, stating that she knew what he had done. At this point counsel for Maselli offered an objection, but it was overruled. She continued, "I can't tell you exactly what he said but, approximately, that he didn't know what I was talking about and we went back and forth with I know what you did * * *. Then, finally, I said to him, the whole episode that happened was all your fault." At this juncture, counsel for Weis stated, "I am going to register an objection because I'm afraid we're getting perilously close to revealing a privileged communication using the back door approach." The objection was overruled. Counsel for Maselli also objected and moved to strike out her testimony and for a mistrial. The objection was overruled and the motion denied. Weis was arrested on June 1, 1966. On that date the police removed from him grey "hush puppy" shoes which he was wearing. One of the shoes had a reddish brown stain on it. After being shown these "hush puppies", Mrs. Weis was asked if she could identify them. She answered that they were her husband's shoes. Asked if her husband had worn them on the night of March 17, 1966 when he came home at midnight, she answered yes. The shoes were then received in evidence over objection by counsel for Weis. She was also shown the broken fishing knife, already in evidence, as hereinbefore indicated, and was asked if she could identify it. She

replied that Weis had quite a few fishing knives similar to the exhibit but she couldn't definitely say it was his. Counsel for Weis thereupon moved to strike the knife from evidence, but his motion was denied. After Mrs. Weis finished her testimony a number of other witnesses were called. One of these was a police chemist who testified about the reddish brown stain found on one of the "hush puppies". He stated that the stain was human blood. However, other than stating that it had been on the shoe for at least seven or eight days, he was unable to determine the precise length of time the blood had been thereon; nor was he able to test the type of blood involved. Afterwards, Mrs. Weis was recalled to the stand, ostensibly at her own request, to clarify her testimony concerning her conversation with Maselli on March 18, 1966. She testified as follows: "Q. You have something to do [sic] with your testimony the other day? A. Yes, it did. I forgot to say a few things. I was pretty nervous and I realized, after I came out, that I had only told half stories; that I wanted to just finish it. Q. All right. Now, please, try to recollect the date that you are going back to and tell us what you indicate you forgot to tell us? A. All right, the 18th. Q. Of what month? A. Oh, of March. Q. All right. A. When Maselli came over in the afternoon, I told that he and I were arguing back and forth but I never really finished what he said to me. I told him that I knew what he had done — Mr. Weisman: Object, your Honor, we have had this. The Court: I'll overrule the objection. She is leading up to the part that she says she omitted to state. Yes? A. I said that I knew that — I said it was all his fault because he was the one, he was hitting her over the head with the drawers and he was punching her and beating her and he said, well, it wasn't all my fault and I asked him why, he said that he had no control over Harry either, Harry was yelling and screaming." The above testimony was vastly different from the previous testimony about the argument with Maselli on March 18, 1966. Moreover, it was prejudicial to Weis. Implicit in the latter version was knowledge on the part of Mrs. Weis of what had happened in the deceased's home. On March 18, 1966 no one would have known of the assault except the perpetrators. Yet, Mrs. Weis indicated knowledge of it on the very day that the crime was committed. With such evidence in the record, the jury could not avoid concluding that Weis had told his wife that Maselli assaulted the deceased and that Weis therefore must have been present when the assault was committed. In my opinion, Mrs. Weis indirectly disclosed a confidential communication between herself and her husband which tended to implicate both defendants in the commission of the crime. Under section 2445 of the former Penal Law, her testimony would be inadmissible on objection by Weis. No such objection was raised by him. However, it is to be noted that, when Mrs. Weis was first sworn as a witness, counsel for Weis indicated that Weis was invoking the privilege afforded by section 2445 of the former Penal Law and was objecting to any testimony by Mrs. Weis relative to any confidential communication between her and her husband. Whether such objection would preserve for review the propriety of the latter testimony need not be reached, since Weis did object, on the ground of privilege, to the original testimony of Mrs. Weis dealing with her conversation with Maselli on March 18th, which, in my opinion, also disclosed, indirectly, a confidential communication. That objection, however, was overruled. It occurs to me that prejudicial error was thus committed in that the jury had before them improper evidence permitting the inference that Weis told his wife what happened on March 18th, thereby implicating himself and Maselli as well. I also conclude that the trial court erred in overruling the objection to the admission of the "hush puppies" into evidence against Weis. This exhibit was incompetent to connect Weis with the commission of the crimes charged against him. I also note, by way of passing, that, when Mrs.

Weis identified these shoes as having been worn by her husband on the night before the crimes were committed, she thereby revealed a confidential communication. Similarly, the trial court erred when it overruled the objection to the admission of the fishing knife into evidence and when it denied the motion by Weis to strike it from the record. The exhibit was incompetent to connect Weis in any way with the crimes charged. Here also Mrs. Weis disclosed a confidential communication when she testified that her husband had knives similar to the exhibit. The errors thus committed against Weis with respect to the original version of the conversation of March 18 and to the afore-mentioned exhibits should be made available to Maselli, since the evidence admitted thereby tended to implicate him and must have been considered by the jury in determining his guilt (cf. *People* v. *Donovan*, 13 N Y 2d 148). Additionally, I believe that prejudicial error was committed by the admission into evidence of certain testimony against Maselli. Hugh Fox, who was a security guard in the apartment house where Maselli resided, testified that on March 18, 1966 he saw Maselli returning home at about 5:20 A.M. and that Maselli appeared to be flushed and his clothes were disarranged. Fox also testified that on June 7, 1966 he appeared before the Grand Jury and that prior to that date he was assaulted by two men. Although he was unable to identify either of the men, he described one of them as having an accent and appearing to be Italian. Objection to said testimony was overruled, the court and the District Attorney stating that the evidence was received subject to connection. Hugh Fox had a background of mental illness and treatment therefor in State hospitals. Morerover, on April 12, 1966, he was arrested in New Rochelle for making more than 100 obscene telephone calls to women; and on April 14, 1966 he was committed to Grasslands Hospital for observation. Clara Fox, Hugh Fox' wife, testified that on April 14, 1966 Maselli came to her home to see her husband. She informed him that Fox was in the hospital and he said to her, " just tell him to keep his mouth shut to the bulls." In my opinion, the admission of the testimony concerning the assault on Fox constituted prejudicial error, since there was no competent evidence connecting Maselli, in any way, with that assault. The testimony of Mrs. Fox did not supply any connection therewith, because the statement advising Fox not to talk to the police would equally permit an extraneous inference, relating to the obscene telephone calls, as it would an inference concerning the case against Maselli. Maselli knew that Fox had been arrested and there was no evidence tending to establish that, prior to the assault on Fox, Maselli knew or had any reason to believe that Fox could implicate him in connection with the murder. Further, there was no evidence indicating that Maselli had any other cause to assault Fox. Despite the absence of any connective evidence, Fox' testimony concerning the assault could very well lead the jury to believe that Maselli was involved in the assault on Fox, since one of the assailants was allegedly an Italian.